Thayer v. The Vermont Department of Children at all. Good afternoon. Attorney Hagan, before you start, you have reserved two minutes for rebuttal. I do want to point out, to the extent the parties are not aware, there was a stipulation the party submitted to have the Lund Family Center, Inc. withdrawn from this appeal. That was accepted by this panel just shortly before argument today. I know it was submitted to the court, I believe, on Friday. But that has been admitted, and so officially the Lund Family Center is no longer part of this appeal. Thank you. You may proceed. Thank you, Your Honor. May it please the court, Colin Hagan, on behalf of the appellants. This court should vacate and reverse and remand the decisions of the district court for four principal reasons. First, the district court inappropriately applied Rooker-Feldman to the bulk of the parent Thayer's claims. Second, the court improperly granted summary judgment with respect to the grandparents' claims based on a conclusion that it was the grandparents' burden to go and seek the interstate compact required under the law. Third, the court improperly applied Younger inconsistent with its decision under Rooker-Feldman. And fourth, the court improperly predicted that the law in the District of Vermont would change based on Virginia law cited by the defendants. This court has been clear for nearly 20 years that Rooker-Feldman does not bar a claim based on an opponent's antecedent conduct, even if that conduct is what ultimately yields the judgment complained of. So I'm familiar with the Hunter case, the Dorsey case, and all the cases about that conduct that precedes the prior judgment would not necessarily be barred by Rooker-Feldman, but I'm struggling to see how this case is similar to Hunter because in this case it seems from reading the complaint that a lot of the allegations in the complaint, if not all of the injury that's alleged, all ultimately stem from the final action which was the removal of the children from the mother and the termination of her parental rights. So can you help explain to me how this case is similar to Hunter because I don't see the similarities. I don't see an independent claim that doesn't stem ultimately from the injury of the removal of the children. Your Honor, Hunter is highly similar to the facts of this case. First, in Hunter the plaintiff was complaining of a similar issue of removal of the children. In fact, in that case the plaintiff was actually seeking to recover the children or reacquire custody of the children. Right, and the court found that's barred by Rooker-Feldman, but I thought the claims that were not barred by Rooker-Feldman were the racial discrimination claim, conduct of defamation, and violation of civil rights by conducting unlawful searches and seizures, which we don't have in this case. So I'm trying to understand how Hunter helps your client. Yes, Your Honor. So what Hunter, what the court did in Hunter was parse the claims very carefully and conclude that even though some of the conduct alleged was barred by Rooker-Feldman, there were, as Your Honor acknowledged, there were other allegations and claims that did not stem from the issue of removal. So what claims do you say survive when they're looked at in that way here? Well, the same claims for constitutional deprivation of a liberty interest. Let's be clear. The claim that the children are not going to be with the mother is foreclosed, right, because the state court has decided that. So what are your antecedent claims that you say do not depend on the finding that custody has now been denied the mother under state law? Well, it's similar to Hunter in the sense that the antecedent conduct. Just tell me what the claim is. What's the claim that is antecedent and not dependent on the adverse finding about custody? The claim that Miss Thayer was basically forced to accept and forced to undergo treatment that was not required. The fact that the... And what is the nature of the claim? What right is being violated there? Well, that's a personal liberty interest that one has. Okay, so you're saying that she was denied liberty by being required to undergo treatment. Under undergo treatment and accept medication that she did not want to accept or believe was necessary to accept. Okay, anything else? Yes, Your Honor. In addition, there was basically the fraud that procured the judgment. And this court has recognized that, at least in other contexts, when the judgment is procured by misconduct, that misconduct antecedent to the judgment, that that's what's complained of and that that is not barred by Rooker-Feldman. So in this case... To what extent is it that she gets money damages, but she doesn't get the children? Is that what you're suing for? That there was a fraud? Correct, Your Honor. Where's that pleaded that you're looking for money damages for fraud? Well, we don't have a claim for... Is it fraud on her or you're saying it's fraud on the court? I'm not sure she sues for that. Well, she doesn't have a claim entitled a claim for fraud under common law. But what she does allege, and the district court even acknowledged this, is that she alleges that even though the DCF knew that there had not been abuse, it continued to argue to the court, and even though it represented to the court that there was not abuse... Is that a claim? That isn't a claim for which she can get any... The only injury she suffered there is the judgment, and you can't challenge that? Or am I missing something? Well, it's true that she can't challenge the judgment and she's not doing so, but she can challenge the conduct that procured the judgment. And here the conduct that procured the judgment was... But this isn't conduct that's separate and distinct from what went on in the court proceeding. That's what I'm troubled by. Basically, you're saying this judgment is fraudulent because these folks lied to the court. Now, the judgment has to stand, but I get what? And I'm not sure I see a case in any event that says that though you're arguing that a judgment was obtained fraudulently, you can sue on that while the judgment still stands. Well, because what she's claiming is that that judgment was not only procured by false statements to the court, but false statements to her, a lack of notice to her, for example, when the DCF in the court immediately, without notice, changed the basis for its transaction. Well, what's the claim? What's the nature of the right there? I mean, what did they owe her that she was denied? I mean, I'm not sure that they had an... It's not right that they lied to her, but what's the claim? Well, she's entitled to notice and an opportunity to be heard before her liberty interests are deprived. Well, she got notice. I thought you were claiming that the notice she was given was based on false claim, false facts. It's both. She got notice at the court while they're arguing. They go in for a conference with the court under a specific theory that the children are being abused or that they've been abandoned, neither of which were true. When the DCF acknowledged, well, there's not been any abuse, we acknowledge that, but now we're going to change and say that it's based on her ability to supervise the children under section C of the Chen statute in Vermont. That was brought up at the courthouse for the very first time. Counsel, having presided over juvenile proceedings and termination of parental rights proceedings, it is not uncommon for a state to pursue termination on multiple grounds or on one ground and then change the grounds. That's all part and parcel of the process. So even assuming she was wronged and that's not good, that's still the injury she's complaining of all stems from this proceeding that resulted in the termination of her parental rights. Unlike Hunter, where there's separate distinct conduct that is not related or dependent on the judgment, like unlawful searches and seizures or defamation. But I guess I'm struggling to see even the first claim that you mentioned in response to Judge Raji's question, forced to undergo treatment, that's part of the specific steps. When a child is removed and there's an effort to reunify the child with the parent, they're asked to undertake steps, specific steps at rehabilitation so that they can presumably be found fit. Again, the injury from having to do that would be part and parcel of the proceeding. How is that separate, a separate injury? Well, as your honor pointed out, I mean the problem with that is that she was told she has to do unspecified things. She was not told exactly here are the metrics that will be evaluated in order to determine that you're now fit. She's told she has to go do these things, go get treatment, go attend counseling, do those other things, but there's not a specific metric that she was told to understand. If you do X, the result will be reunification with your children. It's a moving target all based on just changing circumstances that she never is has noticed of. So that's that's a distinction from, I believe, what your honor is suggesting. But in addition to the issue of being forced to accept treatment, she's also denied, you know, these things are happening with false emergencies. The false the false allegation of an emergency was also at issue in Hunter. That was one of the the claims that I understood or one of the theories that I understood that the court said that's antecedent, that's based on the DCF's conduct or the the analogous entity. The judgment didn't didn't cause the DCF's antecedent conduct in Hunter nor in this case. And so even though there weren't things like police action, well there was actually. I mean the DCF gives her housing and that housing is deemed by the police to be unfit and so the police come without even notice to her and take the children away from that from where she's staying. Then the DCF further basically sets her up for failure by putting her putting the children far away where they know she can't she can't get to. She likes transportation. They take her transportation and housing services without notice and without any opportunity to to seek subsequent services. And so it's those circumstances that constitute the constitutional deprivation that preceded the judgment. Thank you for your time. Thank you counsel. You have reserved your two minutes for rebuttal. I understand attorney McLean and attorney O'Brien you've split your argument six minutes and four minutes correct? Correct your honor. David McLean on behalf of the Department for Children and Families. I appreciate the court's questioning so far with respect to whether there are antecedent or independent claims in this matter. DCF maintains that there are no antecedent claims or independent claims and the district court should be affirmed because it very carefully went through the complaint and evaluated the nature of the injuries that the plaintiff is alleging and the damages they are requesting and determined that for every single count the plaintiff was indeed seeking challenging the family court's orders and seeking to have them undone. The district court though does say at one point that it is applying a standard a holistic standard that is not what the court has now this court has now clarified must be applied and that but for the holistic approach for in some jurisdictions the claims for damages might survive Rooker-Felman. I'm looking at page 29 of the district court's opinion. So is there reason to think the district judge applied the wrong standard acknowledges that there might be claims viable claims if Rooker-Felman were differently applied and should we give it an opportunity to do that? No your honor I don't think that there is any let's take a minute do you do you agree that the district court did not apply the right standard when it when it viewed this holistically rather than looking at the the claims separately? I discussed the standard it did go through and analyze each of the counts in the complaint individually and determine that each one would be barred by Rooker-Felman based upon the nature of the injury alleged and for the every count in the complaint it's the same injury that is alleged the court quotes it and it is the loss of custody of her children for almost four years and the indefinite future that is for every single count in the complaint and really that's what Rooker-Felman comes down to is what is the injury that the plaintiff is alleging and how does that mesh with their causes of action? Well let me ask you for example the plaintiff claims that she was subjected to disability discrimination as a result of being if even if even if there were reasons not to give her custody of children if if disability discrimination informed some of the actions by state officials other than the court does she have a claim there that survives Rooker-Felman? No she doesn't your honor. Help me out. Yes of course so the process of the family court consideration of how the children should be handled and reunification or adoption is all mediated through the family court. The family court is responsible for reviewing the case plans and adopting the the specific steps that the department for children and families recommends. So in that process the court is going to be considering whether or not there are any reasonable accommodations or if those reasonable accommodations would pose an burden. So therefore an ADA claim would be something that the court itself has substantively considered and raising it now would simply require this court to go back and evaluate whether or not the family court did that appropriately. Those are barred. They're different from racial discrimination claims. There is no reasonableness evaluation for what services a person is entitled to based on their race. That is simply wrong racial discrimination. So let me be sure I understand you so you're saying disability discrimination cannot infect a custody decision and for that reason it cannot be brought as a separate claim? I'm not saying that it cannot as a as a hard and fast rule in this case given the nature of the injuries complained of and the complaints that they are making it does it is barred and there is precedent in this circuit for that. I think it's Watley versus the Department for Children and Families District of Connecticut 2019 Westlaw 7067043 similar result. And does the same argument pertain to her claim that she was coerced into voluntarily relinquishing her parental rights? I mean assume arguendo that she's got a plausible claim that she was she was coerced. Does she does she have a separate claim quite apart from the custody claim? No she doesn't your honor. The relief for that would be in state court in an appeal directly to the Vermont Supreme Court alleging ineffective assistance of counsel, coercion. That would be something for the state court to handle. The the claim here if this court were to or the district court were to try to address it would directly require review and of the family court's process. The family court had a very detailed colloquy with plaintiff with determination of parental rights. But is that so clear? Let's assume that after everything she was coerced. Nevertheless the Vermont court looking at the totality of circumstances decided the children should not be with this woman whether she agreed or didn't agree. But does that's why I'm suggesting to you that the coercion claim might be separate from the custody question. Well I think I see what you're saying but the the nature of the injuries alleged in the complaint are the loss of custody of her children. Yeah so that's so you can't get outside of that in this case. Is that because in every count from count one to seven and then the language is repeated in eight as well. At the end of each count there's a statement loss of custody of her children for almost four years and the indefinite future the physical emotional psychological damage resulting from loss of custody separation the plaintiff's children litigation expenses attorney's fees all the prayer for relief within each count the allegation of each count is the custody is precisely and when it came to the voluntary termination I'm assuming but correct me if I'm wrong in termination proceedings a parent can go forward with a trial yes or they can consent to the termination voluntarily terminate and sometimes it's an open with the agreement that it will be an open adoption there'll be some communication sometimes letters are we talking about a situation here with with the advice of counsel this particular plaintiff went through a voluntary termination meaning she opted to voluntarily terminate her parental rights and went through a canvas typically the court does a canvas have you been advised by counsel have you had time to talk to your attorney were you forced to enter into this agreement much like a plea canvas did that happen here is that yes absolutely that happened so the allegations are that her counsel advised her that she should voluntarily terminate there was no hope in uh regaining custody and if she didn't voluntarily terminate she would never see her children again which that was counsel's action that was not dcf action and she did proceed with a voluntary termination so and and the court did go through this colloquy canvas as you're referring to it that is now the claim is now that that was somehow that that was coerced correct correct and not truly voluntary correct yes exactly i see my time is up um thank you good afternoon your honors evan o'brien for john w donnelly phd may have pleased the court there's a single issue a single claim on appeal regarding dr donnelly that's a state law wrongful interference with custody rights claim which was count six under the second amended complaint that claim is governed by section 700 of the restatement second of torts as the district court correctly found and the district court dismissed that claim on dr donnelly's motion for judgment on the pleadings this court should affirm section 700 speaks of abducting or of compelling or of inducing a minor child to leave or not return to their uh to the custody of their parent and there's also a knowledge element as well to section 700 the sole predicate for this claim was dr donnelly's participation in the state court proceeding that my colleague has has described and that the panel is is aware of and his participation consisted as in the role of a mental health evaluator preparing a family evaluation that was meant to assist the court the family division court in doing a best interest analysis and as judge khan your dialogue with my colleague just revealed that that trial and analysis didn't ultimately take place because of the consent judgment that followed but that's the attorney reviewed your client's report and factored that into the attorney's advice on whether he could voluntarily give up her her parental rights or go to trial so you can't say that your client's report didn't have an impact ultimately on the decision to voluntarily give up her parental rights right it well that it we didn't get to that stage in uh in the record so i don't want to say that it it did have an impact i i probably wouldn't say it didn't have an impact either where i guess i'm not trying to put you on the spot to concede that but my point is when when a uh party in a termination of parental rights a parent opts to voluntarily give up their rights they do so mindful of what evidence is likely to be presented against them and that would include all the evidence including your client's report so i'm not sure that it's fair to say he had nothing absolutely nothing to do with this the question is whether whatever violation came out of that report that is that injury stems from the ultimate judgment to terminate her parental rights or not that's really the question i think one of the primary questions before us under rooker felt yes and and we we also we did get a a dismissal on 12c from the district court that this even accepting these allegations is true including what your honor has just posited accepting that is true this is simply not actionable under section 700 and the district court did a um did a very thorough eerie analysis and there is really no alternative eerie analysis that has been i think coherently put as an alternative uh by the by the appellants um here any any kind of alternative body of law uh that could have been used to reach a different conclusion on this particular claim so uh the district court got it right on its eerie analysis and prediction um which was uh i would assume it was correct and should be affirmed thank you thank you thank you counsel uh attorney hagan yes your honor uh you have reserved two minutes thank you your honor on rebuttal two minor points first with respect to the uh my brother's arguments on asked to mr donnelly the issue with the district court's decision and donnelly is the complaint was was founded on a prior decision in the district court that section 700 would apply section 700 of the restatement would apply and that that then the courts in vermont had long held that this type of interference with custody was improper have you any case in which they applied this to um professionals involved in the custody process not in vermont or not under vermont law and that's precisely the issue is because the status of vermont law at the time the complaint was filed was based on um was based on a prior district court decision that the court would apply that the vermont law would apply section 700 what happened in this case is that the district court looked to virginia law to find that the um that section 700 would be read narrowly to apply only to things like abduction and coercion and so forth right but there's no that's not this case and what the district court noted was that um other courts interpreting section 700 have declined to extend its cause of action to ancillary professionals and to that end i believe um reference cases out of state that um having mental health professionals and guardians at light and brought into court on these kind of grounds actually um is highly detrimental to the whole process and so the the conclusion was that you just don't have a cause of action under vermont law for this this sort of action so i started by asking you do you ever been held to account and i gather the answer is no that's correct your honor at least at least that would be binding in vermont or on the district court um so thank you for your time your honor okay thank you counsel thank you to both sides uh we will reserve decision on this um thank you